UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANDREW CORPUS,

                    Plaintiff,

vs.                                          Case No.  2:08-cv-552-FtM-36DNF

MS. TEION-WELLS, DIRECTOR OF  DCFS-
SVP PROGRAM, ET. AL.,

                    Defendants.
_____


**<u>OPINION AND ORDER</u>**

       This matter comes before the Court upon review of the motion
for summary judgment (Doc. #35, Mot. SJ) filed on behalf of
Defendants Budz, Emanolidis, and Cramer.  Andrew Corpus, a *pro se*
plaintiff, who is civilly detained at the Florida Civil Commitment
Center ("FCCC"), alleges that the Defendants, all of whom work at
the FCCC, violated his constitutional rights by showing deliberate
indifference to his serious medical condition.  Defendants Budz,
Emanolidis, and Cramer move for summary judgment and submit
supporting exhibits, including, *inter alia*, an affidavit from
Plaintiff's treating physician at the FCCC, Doctor Lamour, and
relevant copies of Plaintiff's medical records.   In Response,
Plaintiff files a "motion for summary judgment" (Doc. #38) and a
supporting memorandum of law (Doc. #39), but files no supporting

exhibits to his motion.[1]  Thus, considering Plaintiff has filed no
other response to the Defendants' motion, the Court construes
Plaintiff's motion and memorandum of law to be a response to the
Defendants' Motion for Summary Judgment, rather than a cross motion
for summary judgment.[2]  This matter is ripe for review.

**Background**

In July 2008, Plaintiff initiated this action by filing a
Civil Rights Complaint (Doc. #1) and attached exhibits (Pl's Exhs.
A-Z, AA-QQ) consisting of his numerous resident grievances and/or
request forms and responses thereto.  Pursuant to the Court's
November 5, 2008 Order, Plaintiff filed an Amended Complaint (Doc.
#11, Amended Complaint) in December 2008, but included no exhibits.
Pursuant to Fed. R. Civ. P. 6, an amended complaint supercedes the
initial complaint and becomes the operative pleading.  However, in
this case due to Plaintiff's *pro se* status, the Court will review
Plaintiff's exhibits attached to his initial complaint.

In his Amended Complaint, Plaintiff names the following
defendants: Ms. Teion-Wells, who he identifies as the "director" of

---

[1]The Court previously warned Plaintiff of the provisions of
Fed. R. Civ. P. 56.  *See* Doc. #19 at 5.  The Court advised
Plaintiff that if a defendant files a motion for summary judgment,
the party opposing the motion may not depend upon mere allegations
in his pleadings to counter it.  The Court further warned Plaintiff
that if his response to a motion for summary judgment does not
comply with Rule 56, the Court may declare the facts in the
affidavits are established as true and there is no genuine issue of
material fact in dispute.

[2]The Clerk of Court shall correct the docket accordingly.

GEO;[3] Timothy Budz, "executive director" FCCC; George Emodolidis,

"assistant clinical director" FCCC; and Mr. Cramer, "nurse clinic

supervisor at medical" GEO Medical Group, Inc.  Amended Complaint

at 2-3.   Plaintiff alleges that on November 6, 2007, Doctor Lamour

wrote a medical order directing that Plaintiff go to a specialist

for his back.  *Id.* at 5.  Plaintiff claims that he submitted sick

call requests about his continued back pain, but was not taken to

see a back specialist, despite Doctor Lamour's medical directive.

*Id.*  Plaintiff argues that Ms. Cramer "in conspiracy" with Ms.

Teion-Wells, Mr. Budz, and Doctor Emodilidis never put him on the

sick-call list to see a back specialist.  *Id.*  As a result,

Plaintiff states he "suffered pain and physical injury, concern,

and mental distress, because of the lack of medical attention."

*Id.*  Plaintiff seeks monetary damages as relief.  *Id.* at 7.

**Discussion**

Defendants move for summary judgment on all claims.  First,

Defendants contend that Plaintiff's medical condition does not

---

[3]Defendant Teion-Wells is not a party to this action because service was not effectuated on her.  Despite Plaintiff's belated attempts to rectify the unexecuted service of process on Ms. Teion-Wells, the Court will, nevertheless, address Plaintiff's claims against her as if service of process was effected.  See Doc. #36 (notifying Plaintiff that service of process on Ms. Teion-Wells was unexecuted because she no longer works for DCF); Doc. #44 (granting Plaintiff's motion for assistance and directing search of files for last known address of Ms. Teion-Wells); Doc. #46 (directing Plaintiff to resubmit completed service of process forms for Ms. Teion-Wells in light of the provided address); Doc. #48 (re-providing address to Plaintiff; Aug. 10, 2009 docket entry noting Plaintiff submitted only partially completed service forms contrary to Doc. #46).

constitute a serious medical condition. Mot. SJ at 9. Next, Defendants submit that the record shows that they complied with all physician orders or requests. Defendants aver that they were not aware of any of Plaintiff's medical conditions that went untreated. *Id.* at 6. Thus, Defendants argue that, even if Plaintiff's back condition constituted a serious medical condition, Plaintiff cannot show that Defendants acted with deliberate indifference to his medical condition. *Id.* at 10. To the extent Plaintiff alleges a conspiracy claim, Defendants contend they are also entitled to summary judgment on this claim. *Id.* at 12.

**Standard of Review**

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of fact and compels judgment as a matter of law." *Swisher International, Inc. v. Schafer*, 550 F.3d 1046, 1050 (11th Cir. 2008); Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1259-60 (11th Cir.

2004).  The standard for creating a genuine dispute of fact requires courts to "make all *reasonable* inferences in favor of the party opposing summary judgment, *Chapman v. Al Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc) (emphasis added), not to make all *possible* inferences in the non-moving party's favor.  Further, "allegations in affidavits must be based on personal knowledge, and not be based, even in part, "upon information and belief."' *Pittman v. Tucker*, 213 Fed. Appx. 867, 870 (11th Cir. 2007)(quoting *Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002)).  Rule 56(e) provides that an affidavit submitted in conjunction with a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(e).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of persuasion" and must come forward with extrinsic evidence, *i.e.*, affidavits, depositions, answers to interrogatories, and/or admissions, and "set forth specific facts showing that there is a genuine issue for trial."  *Beard v. Banks*, 548 U.S. 521, 529 (2006)(citations omitted); *Celotex*, 477 U.S. at 322; *Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999).  If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences"

must be drawn in favor of the non-moving party.  *Beard*, 548 U.S. at 529 (citations omitted); *Shotz v. City of Plantation, Fl.*, 344 F.3d 1161, 1164 (11th Cir. 2003).  "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'"  *Cuesta v. School Bd. of Miami-Dade County*, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted).  Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact.  *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  In the summary judgment context, however, the Court must construe *pro se* pleadings more liberally than those of a party represented by an attorney.  *Loren v. Sasser*, 309 F.3d 1296, 1301 (11th Cir. 2002).

Title 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws."  To state a claim under 42 U.S.C. § 1983, Plaintiff must allege: (1) Defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law.  *Arrington v. Cobb County*, 139 F.3d 865,

872 (11th Cir. 1998); *U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, Plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1059 (11th Cir. 2001); *Swint v. City of Wadley*, 51 F.3d 988 (11th Cir. 1995); *Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994).

**Defendant Cramer**

At the outset, Defendant Cramer submits that she terminated her employment with the FCCC in May of 2007. Mot. SJ at 5, 40. The incident giving rise to Plaintiff's Complaint occurred on November 6, 2007, when Plaintiff claims Doctor Lamour issued a medical directive that he go to a back specialist, which was ignored. Because the incident giving rise to the Complaint occurred when Ms. Cramer was no longer employed at the FCCC, there is no causal connection whatsoever between this Defendant and the alleged incident giving rise to the instant action. *Marsh*, 268 F.3d at 1059. Thus, summary judgment should be granted as to Defendant Cramer.

**Defendants Teion-Wells, Budz, and Emodilidis**

With regard to the remaining Defendants, the Complaint alleges a claim stemming from Defendants alleged deliberate indifference to Plaintiff's serious medical condition. "[D]eliberate indifference to [the] serious medical needs of [a] prisoner [ ] constitutes the

unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)(quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Campbell v. Sikes*, 169 F.3d 1353 (11th Cir. 1999). As a person who is civilly committed, Plaintiff must be afforded more considerate treatment than that afforded to prisoners. *See Marsh v. Fla. Dep't of Corrections*, 330 Fed. Appx. 179, 182 (11th Cir. 2009)(quoting *Youngberg v. Romeo*, 457 U.S. 307, 322 (1982)); *Lavendar v. Kearney*, 206 Fed. Appx. 860, 863 (11th Cir. 2006)(comparing rights of involuntarily civilly committed individuals to those rights of criminally institutionalized). An involuntarily civilly committed plaintiff has a liberty interest "under the due process clause of the Fourteenth Amendment to reasonably safe conditions of confinement, freedom from unreasonable bodily restraints, and such minimally adequate training as might be required to ensure safety and freedom from restraint." *Lavendar*, 206 Fed. Appx. at 863 (citing *Youngberg*, 457 U.S. at 322). The Eleventh Circuit Court of Appeals has held that "the due process rights of the involuntarily civilly committed are "'at least as extensive' as the Eighth Amendment 'rights of the criminally institutionalized,' and therefore, 'relevant case law in the Eighth Amendment context also serves to set forth the contours of the due process rights of the civilly committed.'" *Id.* at 862-863 (citing *Dolihite v. Maughon*, 74 F.3d 1027, 1041 (11th Cir. 1996)(other citations omitted)).

Nonetheless, "the Eighth Amendment's deliberate indifference jurisprudence is applicable to the Fourteenth Amendment due process rights of pre-trial detainees." *Lavendar*, 206 Fed. Appx. at 863 n. 2 (citing *Purcell v. Toombs County, GA*, 400 F.3d 1213, 1319 (11th Cir. 2005)(other citations omitted)).

In order to state a claim for a violation under the Eighth Amendment, a plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle,* 429 U.S. at 106. This showing requires a plaintiff to satisfy an objective and a subjective inquiry. *Farrow,* 320 F.3d at 1243 (citing *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000)). A plaintiff must first show that he had an "objectively serious medical need." *Id.* A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (citations omitted). "The medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id.* Second, a plaintiff must establish that a defendant acted with "deliberate indifference" by showing both a: (1) subjective knowledge of a risk of serious harm (i.e., both awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists and the actual drawing of the inference); and (2) disregard of that risk; and (3) conduct that is more than gross negligence.

*Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005). "Whether a particular defendant has subjective knowledge of the risk of serious harm is a question of fact 'subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Goebert v. Lee County*, 510 F.3d 1312, 1327 (11th Cir. 2007)(quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

When a prison official eventually provides medical care, the prison official's act of delaying the medical care for a serious medical need may constitute an act of deliberate indifference. *See McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *Harris v. Coweta County*, 21 F.3d 388, 393-394 (11th Cir. 1994); *Brown v. Hughes*, 894 F.2d 1533, 1537-39 (11th Cir. 1990). In determining whether the length of the delay violates the constitution, relevant factors for the Court to consider include the nature of the medical need and the reason for the delay. *McElligott*, 182 F.3d at 1255. The Court should consider whether the delay in providing treatment worsened the plaintiff's medical condition, and as such "[a]n inmate who complains that delay in medical treatment [rises] to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay." *Hill v. Dekalb Regional Youth Detention Center,* 40 F.3d 1176, 1187 (11th

Cir. 1994), *abrogated on other grounds Hope v. Pelzar*, 536 U.S. 730 (2002).

In their motion for summary judgment, Defendants first argue that Plaintiff has not shown that his degenerative disc disease is an objectively serious medical need. Mot. SJ at 9. In particular, Defendants point out that Doctor Lamour did not find it medically necessary to recommend that Plaintiff see a back specialist until February 2009. *Id.*

The record reveals that Plaintiff first complained of "low back pain and neck pain" on October 22, 2007. *Id.* at 36. As evidenced by his medical records, Plaintiff explained to medical that sometimes his right leg would "give out" when standing for a long period of time. *Id.* On this date, Plaintiff described the pain as "radiating" from the back down his right leg. *Id.* Approximately three months later, Plaintiff's medical notes again indicate that he complained of "severe pain in his lower back." *Id.* at 31. Plaintiff explained that sometimes his back would spasm and he could not move. *Id.* On that particular day, he stated that he could not get out of bed. *Id.* As a result of his immobility, Plaintiff was temporarily placed in a wheelchair. *Id.* at 31; *see also Id.* at 29 (noting "severe back pain"). Notably, however, it does not appear that Plaintiff's back pain regularly occurred, or that the pain impaired his ability to walk on a daily basis as medical notes indicate Plaintiff mentioned no back pain during

several medical appointments. *Id.* at 27-28, 20, 33-34, 37; *Parzyck v. Prison Health Services*, 290 Fed. Appx. 289, 291 (11th Cir. 2008)(finding a serious medical condition existed when severe back pain occurred on a daily basis that prevented the plaintiff from walking normally). In fact, in July 2007, Plaintiff filed a resident request to ask for the job of handling the weed-eater at the FCCC. Pl's Exhs. at R, S. Plaintiff filed another resident request form, seeking clearance by the medical department for this work assignment, which he eventually received from medical. Pl's Exhs. T, V. Based on the foregoing, irrespective of whether Plaintiff's pain was a result of degenerative disc disease, or some other back condition, the Court will assume only *arguendo* that Plaintiff's back condition constituted a serious medical condition. The Court now turns to whether there remains an issue of material fact as to whether the Defendants acted with deliberate indifference to Plaintiff's serious back condition.

As previously stated, a plaintiff must establish that a defendant acted with "deliberate indifference" by showing both a: (1) subjective knowledge of a risk of serious harm; and (2) disregard of that risk; and (3) conduct that is more than gross negligence. Supra at 9-10. Plaintiff claims Doctor Lamour issued a medical directive on November 6, 2007, that Plaintiff see a specialist for his back. Plaintiff avers that Defendants, knew of Lamour's medical order and in contradiction to that order, did not

allow him to see a back specialist. Defendants submit an affidavit from Doctor Lamour evidencing that Lamour, in fact, did not find it medically necessary for Plaintiff to see a back specialist. Mot. SJ at 9; 16. Lamour states that it was not until February 2, 2009, when Plaintiff first complained of "numbness and tingling" in his back that he found it medically necessary for Plaintiff to receive a second opinion from a back specialist. *Id.* at 16. Doctor Lamour further states that he is not aware of any other order from a physician, in 2007 or any other time, that directed that Plaintiff see a back specialist. *Id.* at 17.

Plaintiff does not produce Doctor Lamour's 2007 medical order. *See* Pl's Exhs. In fact, Plaintiff produces no evidence supporting his claim that Defendants acted in contradiction to any medical directive. To the contrary, the record shows that when Plaintiff submitted a grievance or request form concerning his back pain, he was referred to the medical department, provided a medical appointment at the FCCC, and prescribed various medications for his pain. *See generally* Pl's Exhs. K, L, O, BB, HH, JJ, OO. Although it appears that Plaintiff's back condition was chronic, in July 2007 Plaintiff's back felt well enough that he requested permission to be given a work assignment at the FCCC consisting of handling the weed-eater. The record shows that Plaintiff had isolated incidents where he would experience more back pain, such as, on February 17, 2008, when Plaintiff stated he had muscle spasms in

his back. *Id.* at KK. The record shows, however, that on that date Plaintiff was seen by the Doctor, given a shot, held overnight in the medical department for observation, and provided pain medication. *Id.*

While the medical department, specifically Doctor Lamour, who is not named as a defendant, was actively involved in the treatment of Plaintiff's back condition, it is unclear what, if any, involvement Defendant Emanolidis or Ms. Teion-Wells had in the alleged incidents. Plaintiff has not shown that either Defendant Emanolidis or Ms. Teion-Wells had an awareness of any facts from which the inference could be drawn that a substantial risk of serious harm existed. Moreover, the record is devoid of any evidence suggesting that these Defendants actually drew the inference. Defendant Budz reviewed and signed multiple resident request forms concerning Plaintiff's back condition, but these forms indicate that Plaintiff was routinely seen and treated by the FCCC medical department. To the extent Plaintiff seeks to attribute liability on Budz because of his position as the Executive Director at the FCCC, Defendant Budz cannot be held responsible for the alleged unconstitutional acts of his subordinates on the basis of *respondeat superior* or vicarious liability in this § 1983 action. *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citations omitted); *see also Monell v. Dep't of Soc. Serv.*, 436 U.S. 658,

690-692 (1978); *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993), *cert. denied*, 510 U.S. 1164 (1994).

Instead, Plaintiff argues that Defendants conspired against him to violate his constitutional rights. The Court finds that this claim also fails. "To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff must show that the parties reached an understanding to deny the plaintiff his or her right and prove an actionable wrong to support the conspiracy." *Bailey v. Bd. of County Comm. of Alachua County, Fla.*, 956 F.2d 1112, 1122 (11th Cir. 1992), *cert. denied*, 506 U.S. 832 (1992)(other citations omitted). Plaintiff has produced no evidence in this case to support any conspiracy claim.

To the extent Plaintiff attempts to allege a deliberate indifference claim stemming from the delay in treatment because he was not seen by a back specialist until February 2009, Plaintiff does not place verifiable evidence into the record showing a detrimental effect as a result of the delay. Doctor Lamour submits that he did not find it medically necessary to refer Plaintiff for a second opinion with a specialist until February 2009. The course of treatment chosen by a medical official is "a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. Thus, no constitutional violation exists where an inmate and prison medical official merely disagree as to the proper course of medical treatment. *Id.* at 106. Classic examples of matters for medical judgment include whether an x-ray, or additional diagnostic

technique or form of treatment are indicated. *Id.* at 107. Because Plaintiff cannot show Defendants acted with deliberate indifference, Defendants are entitled to the entry of summary judgment in their favor.

ACCORDINGLY, it is hereby

**ORDERED**:

1.    The Clerk of Court shall correct the docket to show that the Court construes Plaintiff's "motion for summary judgment" (Doc. #38) to be a response to the Defendants' motion for summary judgment.

2.    Defendants' motion for summary judgment (Doc. #38) is **GRANTED** as to all Defendants including Ms. Teion-Wells.

3.    The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this 5th day of May, 2010.

Charlene Edwards Honeywell
United States District Judge

SA: alj

Copies: All Parties of Record